## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROYAL WHITE CEMENT INC. | * | CIVIL ACTION NO. |
| | * | |
| | * | |
| | * | SECTION " " ( ) |
| VERSUS | * | |
| | * | JUDGE |
| | * | |
| M/V WECO HOLLI | * | |
| AND HER TACKLE, EQUIPMENT AND | * | MAGISTRATE |
| APPURTENANCES, *in rem*, et al. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## VERIFIED COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Royal White Cement Inc. ("RWC"), and for its complaint against the M/V WECO HOLLI (IMO No. 9929699) and her tackle, equipment, and appurtenances, *in rem*, Ocean Green Maritime PTE LTD ("Ocean Green"), Kyowa Sansho KK ("Kyowa"), Belships Management Singapore ("Belships"), Pegasus Denizcolik A.S. ("Pegasus"), Associated Terminals, Inc. ("Associated"), Associated Terminals Pangea Logistics, LLC ("Pangea"), Pepperell Cove Marine Services ("Pepperell"), Vanquish Crane & Construction, LLC ("Vanquish"), and On-Site Concrete Solutions, LLC ("On-Site"), *in personam*, and alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1.      This is an action for damages to an ocean shipment of 14,009 bags of Portland cement (the "Houston Cargo") being transported in international commerce.

2.      This is a claim within this Honorable Court's admiralty and maritime jurisdiction, pursuant to Art. II, §2 of the U.S. Constitution and 28 U.S.C. § 1333.  This is also an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and the Supplemental Admiralty and Maritime Rules of the Federal Rules of Civil Procedure.

#4881911v1

3.     This matter is governed by the Carriage of Goods by Sea Act, 46 U.S.C. § 30701, et seq. ("COGSA").  This Court has supplemental jurisdiction over any common law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this District in accordance with Rule C and 28 U.S.C. § 1391 and because the vessel, crew negligence, and/or defendants' negligence sued upon occurred in this District.

## THE PARTIES

5.     Plaintiff, RWC is a corporation headquartered in Houston, Texas, USA.  Under the applicable bill of lading, RWC was the consignee of the Houston Cargo.

6.     *In rem* Defendant, the M/V WECO HOLLI (the "vessel" or "WECO HOLLI"), is a bulk carrier vessel sailing under the flag of Singapore, approximately 199 meters in length and 32 meters in width, of 61,275 MT DWT, bearing IMO number 9929699, and MMSI number 563154700.  A maritime lien attached to the vessel as a result of the damage to the Houston Cargo.

7.     *In personam* Defendant, Ocean Green, was and still is a foreign corporation and/or other legal entity, organized, created, and existing pursuant to the laws of a foreign country or countries, and is the owner and/or operator and/or charterer of vessels engaged in common carriage of cargo, including the cargo described herein below, as common carrier on the high seas for hire, and was the owner of the WECO HOLLI at all relevant times.

8.      *In personam* Defendant, Kyowa was and still is a foreign corporation or other legal entity organized, created, and existing pursuant to the laws of a foreign country or countries, managing and/or operating vessels engaged in common carriage of cargo, including

the cargo described herein below, and was the manager and/or operator of the WECO HOLLI at all relevant times.

9.      *In personam* Defendant, Belships was and still is a foreign corporation or other legal entity organized, created, and existing pursuant to the laws of a foreign country or countries, managing and/or operating vessels engaged in common carriage of cargo, including the cargo described herein below, and was the manager and/or operator of the WECO HOLLI at all relevant times.

10.      *In personam* Defendant, Pegasus was and still is a foreign corporation or other legal entity organized, created, and existing pursuant to the laws of a foreign country or countries, chartering, managing and/or operating vessels engaged in common carriage of cargo, including the cargo described herein below, and was the charterer, manager and/or operator of the WECO HOLLI at all relevant times

11.      *In personam* Defendant, Associated Terminals, Inc. ("Associated"), is a Louisiana corporation existing under the laws of the State of Louisiana, domiciled in Reserve, La.

12.      *In personam* Defendant, Associated Terminals Pangea Logistics, LLC ("Pangea") is a limited liability company duly organized and existing under the laws of Delaware and registered to do and doing business in the State of Louisiana.

13.      *In personam* Defendant, Pepperell Cove Marine Services, LLC ("Pepperell") is a New Hampshire limited liability company, doing business in Louisiana.

14.      *In personam* Defendant, Vanquish Crane & Construction, LLC ("Vanquish") is a limited liability company organized under the laws of the State of Texas, doing business in Louisiana.

15.     *In personam* Defendant On-Site Concrete Solutions, LLC ("On-Site") is a Texas limited liability company, or entity, doing business in Louisiana.

## FACTS AND CLAIMS

16.     Upon information and belief, at all times relevant to this suit, the the M/V WECO HOLLI is and was owned by Ocean Green Maritime PTE LTD ("Ocean Green"), managed by Kyowa Sansho KK ("Kyowa") and/or Belships Management Singapore ("Belships"), chartered to Pegasus Denizcolik A.S. ("Pegasus"), and voyage chartered to RWC.

17.     American Shipping and Chartering Corp. ("ASC"), on behalf of the master of the M/V WECO HOLLI, issued Bill of Lading No. PDEK2211HSTN0001 for the carriage of 18,985 MT of grey Portland cement in 14,009 bags from Port Said, Egypt to Houston, Texas, USA.  The bill of lading issued on behalf of the master bound the vessel *in rem*.

18.     ASC, on behalf of the master of the M/V WECO HOLLI, also issued Bill of Lading No. PDEK2211NOLA0001 for the carriage of 40,815 MT of grey Portland cement in 30,119 bags from Port Said, Egypt to New Orleans, Louisiana (the "New Orleans Cargo").  The New Orleans Cargo was sold by RWC on C&F terms to On-Site.

19.     On or around June 21, 2022, a total of 44,128 bags of grey Portland cement were loaded onboard the M/V WECO HOLLI, in Port Said, Egypt, in holds 1, 2, 3, 4, and 5 pursuant to Bill of Lading Nos. PDEK2211HSTN0001 and PDEK2211NOLAN0001, of which 30,119 was to be delivered to New Orleans, Louisiana and 14,009 was to be delivered to Houston, Texas.   The vessel's stowage plan showed that the New Orleans Cargo was all loaded above the Houston Cargo.

20.     No exceptions were noted on the bill of lading, PDEK2211HSTN0001.

21.    The Houston Cargo covered by Bill of Lading Nos. PDEK2211HSTN0001 was in good order and condition when it was tendered, loaded, and accepted at the load port.

22.    The M/V WECO HOLLI arrived in New Orleans, Louisiana on or about July 14, 2020 and stevedores subsequently discharged bags of cement from holds 1, 2, 3, 4, and 5. Rather than discharging the New Orleans Cargo that was loaded on top of the Houston Cargo, the stevedores unloaded the cargo that was located directly beneath the cargo hatches without regard to whether it was New Orleans Cargo or Houston Cargo, and did not discharge the New Orleans Cargo that was stowed in the wings of the cargo holds.  This resulted in the cargo that remained in the holds being unsupported.

23.    Upon information and belief, when the vessel arrived in New Orleans, the Houston Cargo was in apparent good order and condition.

24.    Upon information and belief, On-Site contracted with Pepperell, Vanquish, Associated, and/or Pangea stevedores (hereinafter, the "stevedores") to discharge the New Orleans Cargo covered by PDEK2211NOLAN0001 in New Orleans.

25.    Upon information and belief, stevedores discharged cargo using tackle, equipment, and/or gear owned or operated by the stevedoring companies.

26.    Cargo was discharged in New Orleans at a terminal and/or facility owner, operated, and/or managed by Associated Terminals and/or Pangea.

27.    Upon information and belief, Associated or Pangea sub-contracted with Vanquish and/or Pepperell to act as stevedores during the cargo operations conducted by Associated.

28.     Upon information and belief, employees of On-Site, Vanquish, Pepperell, Associated, and/or Pangea conducted, oversaw, managed, directed, or were involved in cargo operations and stevedoring services.

29.     Upon information and belief, the captain and/or crew of the M/V WECO HOLLI observed the New Orleans discharge operations but did not intervene, suspend, or otherwise stop cargo operations in New Orleans.

30.     After discharge in New Orleans was complete, the M/V WECO HOLLI proceeded to Houston to discharge the remaining consignment, totaling 14,009 bags, arriving at the Peninsula Terminal in Houston on July 28, 2022.

31.     Upon information and belief, upon arrival in Houston, it was discovered that the Cargo bags covered by Bill of Lading NO. PDEK2211HSTN0001 shifted, fell, and/or collapsed, and suffered extensive damage during the voyage between Houston and New Orleans, causing cement to spill from bags into the cargo holds.

32.     Upon information and belief, the collapse, shifting, and movement of the bags during the voyage between New Orleans and Houston was a direct consequence of the failure of On-Site, Vanquish, Pepperell, Associated, and/or Pangea to properly discharge the New Orleans Cargo and to ensure that the cargo remaining the cargo holds was safely and properly stowed and secured.

33.     Upon information and belief, the captain and crew of the M/V WECO HOLLI proceeded to sail from New Orleans to Houston with knowledge that cargo remaining in the cargo holds was not properly secured and stowed following stevedore operations.

34.     Upon information and belief, the collapse, shifting, and movement of the bags during the voyage between New Orleans and Houston was a direct consequence of the captain

and crew of the M/V WECO HOLLI's decision to depart New Orleans with knowledge that the Cargo was insufficiently secured, unstable, and/or unreasonably exposed to potential damage.

35.     Shifting in holds 1, 2, 3, 4, and 5 caused physical damage to the Cargo and resulted in large quantities of cement spilling from torn, burst, and/or damaged bags, and/or becoming contaminated.

36.     In addition to value of the physical loss or damage to the Cargo, there were additional losses including but not limited to excess handling fees, stevedoring costs, cleaning fees, survey fees, demurrage, and other extra costs and damages.

37.     The delays in discharging, clean-up, and the subsequent discharge operations have caused damages for the Plaintiff, including demurrage estimated at $738,512.50, additional discharge costs of $88,800, excess handling and cleaning costs of $138,925, and surveyor costs of $1,550.

38.     Plaintiff will also suffer a loss, shortage, and damage to Cargo in the estimated amount of $888,000.

39.     Total estimated damages and expenses are in excess of $1,855,787.5, which may continue to accrue, no part of which has been paid, although duly demanded.

40.     Plaintiff has and claims a maritime lien against the M/V WECO HOLLI, her engines, boilers, tackle, etc., for the aforesaid damage and loss in the aggregate sum of $1,855,787.5, plus survey fees and expenses, with interest thereon and their costs and disbursement, for all attendant damages directly or indirectly attributable to the circumstances described above.

41.     Plaintiff has suffered and will suffer extensive pecuniary damages as a result of the condition of the Cargo, as well as increased expenses in its effort to mitigate those damages.

42.     Prior to commencement of this action, plaintiff became the owner of the Cargo described above and the covering bills of lading.

43.     Plaintiff and its predecessors in title have performed all of the conditions precedent on its part to be performed under the terms of the aforesaid bills of lading.

44.     The above-described damages to the Cargo were not caused by any act and/or omission of the plaintiff.

**FIRST CAUSE OF ACTION**

45.     Plaintiff reiterates and re-avers the allegations of Paragraphs 1 through 44 of this Complaint.

46.     The cargo covered by Bill of Lading No. PDEK2211HSTN0001 was in good order and condition when it was tendered, loaded, and accepted at the load port, but it was not delivered to RWC at the discharge port of Houston in the same good order and condition; instead, the cargo covered by Bill of Lading No. PDEK2211HSTN0001 was damaged, moved, shifted, collapsed, spilled, crushed, contaminated, and/or destroyed.

47.     The aforementioned conditions of the M/V WECO HOLLI and damages were in no way attributable to any fault, negligence or want of care on the part of RWC, but rather were the result of, and caused by the fault, negligence, unseaworthiness, and/or want of care of the M/V WECO HOLLI and/or its owners, operators, managers, other charterers and/or agents, all of which was a breach of the obligations under the governing contract(s) of carriage as carrier and/or bailee of the Cargo, and/or under the Carriage of Goods by Sea Act, and/or some other governing scheme of liability, in the following non-exclusive  respects:

     a.  By failing to maintain and monitor the vessel's condition;

     b.  By failing to use due care under the circumstances;

c. By failing to take appropriate corrective actions;

d. By failing to properly inspect and maintain the vessel and cargo;

e. By failing to properly load, stow, secure and discharge the cargo aboard the vessel;

f. By failing to deliver the Cargo in good order and condition;

g. By failing to train and/or supervise the crew;

h. By failing to reasonably ensure the safety of the Cargo;

i. By failing to intervene and stop or correct the negligent discharge of the New Orleans Cargo;

j. By allowing the vessel to sail with the Houston Cargo insufficiently secured, unstable, and/or unreasonably exposed to potential damage;

k. Failure to exercise due care for the custody of the New Orleans Cargo, breach of bailment, misinformation, and/or reckless and gross negligence. and

l. Any and all acts of negligence, fault, statutory violations and/or lack of due care, to be proven at trial.

## <u>SECOND CAUSE OF ACTION</u>

48.     Plaintiff reiterates and re-avers the allegations of Paragraphs 1 through 44 of this Complaint.

49.     The damage to the Cargo was caused, in whole or in part, by the negligence, want of care, fault, breach of contract, breach of warranty (express or implied) and/or failure to perform in a workmanlike manner on the part of Associated Terminals, Inc., Pepperell Cove Marine Services, Associated Terminals Pangea Logistics, LLC, Vanquish Crane & Construction,

LLC, and On-Site Concrete Solutions, LLC (the "stevedoring defendants") and/or those for whom they are responsible in the following non-exclusive respects:

    a.  The stevedoring defendants failed to discharge, stow, transload, and/or handle the cargo in a proper, prudent, and safe manner;

    b.  The stevedoring defendants failed to properly train their employees and/or the personnel was inexperienced or otherwise unfit to operate the machinery and equipment to safely and properly discharge, stow, transload, and/or handle the cargo.

    c.  The stevedoring defendants utilized improper equipment and insufficient manpower to safely and properly discharge, stow, transload, and/or handle the cargo.

    d.  The stevedoring defendants failed to properly re-secure the Houston Cargo following partial discharge of the New Orleans Cargo.

    e.  Any acts of negligence, want of care, and/or fault as will be shown at the trial of this matter.

50.    RWC reserves the right to amend this complaint to include any additional *in personam*, *in rem*, Rule B or *quasi in rem* claims as may become available after further investigation and/or discovery;

51.    All and singular the matters aforesaid are true and correct.

WHEREFORE, Royal White Cement Inc. prays:

    (1) That defendants be served with copies of this Complaint, together with summonses to appear and answer under oath all and singular the matters aforesaid.

(2) That the Court order, adjudge, and decree that defendants, M/V WECO HOLLI, *in rem*, Ocean Green Maritime PTE LTD, Kyowa Sansho KK, Belships Management Singapore, Pegasus Denizcolik A.S, Associated Terminals, Inc., Pepperell Cove Marine Services, Associated Terminals Pangea Logistics, LLC, Vanquish Crane & Construction LLC, and On-Site Concrete Solutions, LLC pay Royal White Cement Inc. the losses sustained by it, together with interests thereon and its costs and disbursements; and

(3) That the Court grant such other and further relief as may be just in the circumstances.

Respectfully submitted,

*/s/ Alexander J. DeGiulio*
HAROLD K. WATSON
ALEXANDER J. DEGIULIO
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Email: watson@chaffe.com
Email*:* alex.degiulio@chaffe.com
***Attorneys for Royal White Cement Inc.***

**PLEASE HOLD SERVICE**