## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROYAL WHITE CEMENT, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-788** |
| **WECO HOLLI M/V, ET AL.** | **SECTION "O"** |

### ORDER AND REASONS

Before the Court in this maritime-cargo-damage case are two motions[1] to compel arbitration and stay this litigation under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. § 206. In the first motion, Defendant Pegasus Denizcilik A.S.—charterer of the vessel carrying the allegedly damaged cargo, the MV/WECO HOLLI—moves to compel arbitration of the claims Plaintiff Royal White Cement, Inc., the cargo's consignee, asserts against Pegasus in accordance with an arbitration provision in a charter party between Royal White and Pegasus. In the second motion, Defendant Ocean Green Maritime Pte. Ltd., owner of the M/V WECO HOLLI, moves to compel arbitration of the contract claims Royal White asserts against the M/V WECO HOLLI, *in rem*, in accordance with a bill of lading that incorporates the terms of the Royal White–Pegasus charter party. For the reasons that follow, the motions are **GRANTED IN PART** insofar as they seek to compel arbitration of the claims that Royal White asserts against Pegasus and the M/V WECO HOLLI, *in rem*, and to stay the case as to those claims only. But the motions are **DENIED IN PART** insofar as they seek to stay the case in its entirety.

---

[1] ECF Nos. 47 & 75.

## I. BACKGROUND

This maritime-cargo dispute arises from alleged damage to 14,009 bags of cement that were being shipped from Port Said, Egypt, to Plaintiff Royal White in Houston, Texas, aboard the vessel the M/V WECO HOLLI.[2] Pegasus was "the charterer, manager and/or operator" of the vessel.[3] Ocean Green owned the vessel.[4]

A June 9, 2022 charter party between Pegasus and Royal White (the "Charter Party") governed the transportation of the bags of cement.[5] Under the Charter Party, Pegasus agreed to carry the bags of cement aboard the M/V WECO HOLLI from Egypt to Houston, with a stop in New Orleans.[6] The Charter Party contains a mandatory arbitration provision that states in relevant part that "any dispute arising out [sic] this Charter Party shall be referred to arbitration in London."[7]

A bill of lading issued in conjunction with the cement shipped to Royal White in Houston (the "Houston Bill of Lading").[8] The Houston Bill of Lading lists Royal White as the consignee of the 14,009 cement bags;[9] states the freight is "payable as per" the Charter Party;[10] and incorporates "[a]ll terms and conditions, liberties and exceptions of the Charter Party . . . including the Law and Arbitration Clause . . . ."[11]

---

[2] ECF No. 34 at ¶ 1.
[3] *Id.* at ¶ 8.
[4] *Id.* at ¶ 14.
[5] ECF No. 95-2 at 6.
[6] ECF No 47-5 at 2; ECF No. 95-2 at 6.
[7] ECF No. 95-2 at 11 (§ 41.1).
[8] ECF No. 75-2 at 1.
[9] *Id.*
[10] *Id.*
[11] *Id.* at 2.

Consistent with the Charter Party and the Houston Bill of Lading, the cement was loaded onboard the M/V WECO HOLLI in Egypt.[12] The vessel carried 44,128 total bags of cement: 30,119 bags to be discharged in New Orleans under a bill of lading not at issue here (the "New Orleans Cargo"), and 14,009 bags to be discharged in Houston (the "Houston Cargo") in accordance with the Houston Bill of Lading.[13]

The M/V WECO HOLLI arrived in New Orleans with the Houston Cargo in good condition.[14] On-Site Concrete Solutions, LLC, the buyer of the New Orleans Cargo, contracted with four stevedoring companies to help discharge the New Orleans Cargo from the M/V WECO HOLLI: Associated Terminals, LLC; Associated Terminals Pangea Logistics, LLC; Pepperell Cove Marine Services, LLC; and Vanquish Crane & Construction, LLC.[15] But those stevedores allegedly unloaded the bags of cement "without regard to whether" the cement was supposed to be delivered to New Orleans or Houston, and the stevedores allegedly "did not discharge the New Orleans Cargo that was stowed in the wings of the cargo holds."[16] As a result, the Houston Cargo that remained was allegedly left "unsupported."[17] The captain and crew of the M/V WECO HOLLI allegedly observed the discharge of the New Orleans Cargo, "but did not intervene, suspend, or otherwise stop cargo operations . . . ."[18]

---

[12] ECF No. 34 at ¶ 17.
[13] *Id.*
[14] *Id.* at ¶ 21.
[15] *Id.* at ¶ 22.
[16] *Id.* at ¶ 20.
[17] *Id.*
[18] *Id.* at ¶ 27.

3

After the New Orleans Cargo was discharged, the vessel continued its voyage to Houston.[19] There, "it was discovered" that the Houston Cargo had allegedly "shifted, fell, and/or collapsed, and suffered extensive damage during the voyage between Houston and New Orleans, causing cement to spill from bags into the cargo holds."[20] According to Royal White, "large quantities of cement'" "spill[ed] from torn, burst and/or damaged bags, and/or bec[ame] contaminated" because of "[s]hifting" in the M/V WECO HOLLI's cargo holds.[21] Besides the physical damage to the Houston Cargo, Royal White suffered "additional losses" in the form of "excess handling fees, stevedoring costs, cleaning fees, survey fees, and other extra costs and damages."[22]

This lawsuit followed. Claiming over $1.8 million in damages, Royal White sued, *inter alia*, Pegasus; the M/V WECO HOLLI, *in rem*; and the stevedores, subcontractors, and others involved in unloading the New Orleans Cargo.[23] Royal White brings a breach-of-contract claim against Pegasus under the Charter Party, an *in rem* tort claim against the M/V WECO HOLLI under the Carriage of Goods by Sea Act, and negligence claims against the stevedores and their subcontractors.[24] Some Defendants later crossclaimed against each other for contribution and indemnity.[25]

---

[19] *Id.* at ¶ 28.
[20] *Id.* at ¶ 30.
[21] *Id.* at ¶ 33.
[22] *Id.* at ¶ 34.
[23] *Id.* at ¶¶ 6, 8, 9–13.
[24] *Id.* at ¶¶ 43–49; ECF No. 84 at 3.
[25] *See* ECF No. 43 at 12–14 ¶¶ 1–4 (operative crossclaims of Ocean Green, as claimant of the M/V WECO HOLLI, *in rem*); ECF No. 45 at 11–21 ¶¶ 1–42 (operative crossclaims of Associated Terminals and Associated Terminals Pangea Logistics); ECF No. 58 at 15–19 ¶¶ 1–13 (operative crossclaims of On-Site Concrete Solutions); ECF No. 71 at 9–14 ¶¶ I–XIII (operative crossclaims and third-party demand of Pepperell Cove Marine Services).

## II. ANALYSIS

Pegasus and Ocean Green move the Court to compel arbitration and to stay this maritime-cargo case under the Convention.[26] *See* 9 U.S.C. § 206. They contend that Royal White's claims against Pegasus and the M/V WECO HOLLI, *in rem*, are subject to the Charter Party's arbitration provision, which Ocean Green contends is incorporated into the Houston Bill of Lading.[27] Royal White opposes the motion on limited grounds.[28] Royal White does not deny that its claims against Pegasus and the M/V WECO HOLLI, *in rem*, are subject to mandatory arbitration under the Charter Party.[29] But Royal White nonetheless contends that Pegasus and Ocean Green—in their opening briefs, at least—failed to carry their burden to prove the existence of a written agreement to arbitrate the claims at issue.[30] And Royal White submits that if the Court compels arbitration, the Court should stay only Royal White's claims against Pegasus and the M/V WECO HOLLI, *in rem*—not the case in its entirety.[31]

### A.  Compelled Arbitration Under the Convention

Pegasus and Ocean Green have shown that Royal White should be compelled to arbitrate its claims against Pegasus and the M/V WECO HOLLI, *in rem*, under the Convention. "The Convention is an international treaty that provides citizens of

---

[26] ECF Nos. 47 & 75.
[27] *Id*.
[28] ECF No. 84 at 1–12.
[29] *See id*.
[30] *Id*. at 5–6.
[31] *Id*. at 7–12. For their part, Associated Terminals, Associated Terminals Pangea Logistics, and On-Site Concrete Solutions take no position on the arbitrability of Royal White's claims against Pegasus and the M/V WECO HOLLI, *in rem*; however, they contend that they cannot be compelled to arbitrate because they are not parties to the arbitration provision in the Charter Party. ECF Nos. 57, 61, 77, 79. And they add that any stay pending arbitration should extend only to Royal White's claims against Pegasus and the M/V WECO HOLLI, *in rem*. ECF Nos. 57, 61, 77, 79.

signatory countries the right to enforce arbitration agreements." *Bufkin Enters., L.L.C. v. Indian Harbor Ins. Co.*, No. 23-30171, —F.4th—, 2024 WL 1262225, at *3 (5th Cir. Mar. 26, 2024) (per curiam). "Its purpose is 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in signatory countries.'" *Id.* (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)). The Federal Arbitration Act ("FAA") "codifies the Convention, providing that it 'shall be enforced in United States courts in accordance with [the FAA's terms].'" *Id.* (brackets in original) (quoting 9 U.S.C. § 201).

To decide if the Convention requires Royal White to arbitrate its claims against Pegasus and the M/V WECO HOLLI, *in rem*, the Court "conduct[s] only a very limited inquiry." *Id.* (internal citation and quotation marks omitted). That "very limited inquiry" requires the Court to "compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* (internal citation and quotation marks omitted). "Once these factors are met," the Court "must order arbitration unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." *Id.* (brackets in original) (internal citation and quotation marks omitted). The Court takes each element in turn.

### 1. Element One: Written Agreement to Arbitrate

Pegasus and Ocean Green have satisfied the first of the four elements necessary to compel arbitration under the Convention because Pegasus and Ocean Green have presented evidence of a written agreement to arbitrate that covers the claims that Royal White asserts against Pegasus and the M/V WECO HOLLI, *in rem*.

Pegasus has presented evidence of a written agreement to arbitrate that covers the claims that Royal White asserts against it. The June 9, 2022 Charter Party between Pegasus and Royal White contains an arbitration provision that states that "any dispute arising out [of] this Charter Party shall be referred to arbitration in London . . . ."[32] Royal White's breach-of-contract claim against Pegasus is a "dispute arising out [of] this Charter Party"[33] because that claim is for breach of that Charter Party.[34] Accordingly, Pegasus has met the first element.

Ocean Green has presented evidence of a written agreement to arbitrate that covers the *in rem* claims Royal White asserts against the M/V WECO HOLLI. It has done so through the Houston Bill of Lading's incorporation of the terms of the Charter Party, including the Charter Party's arbitration provision. Three steps show why.

First, both the M/V WECO HOLLI, *in rem*, and Royal White are bound by the Houston Bill of Lading. Royal White is bound by the Houston Bill of Lading because Royal White is a party to the Houston Bill of Lading, and because Royal White accepted the terms of the Houston Bill of Lading when Royal White sued for damages

---

[32] ECF No. 95-2 at 11 (§ 41.1).
[33] *Id.*
[34] ECF No. 34 at ¶¶ 43–45 (Royal White's first cause of action); *see also* ECF No. 84 at 7 (Royal White's characterization of its claim as presenting "a contractual dispute with Pegasus").

7

under the Houston Bill of Lading. *See, e.g.*, *Royal SMIT Transformers BV v. Onego Shipping & Chartering, BV*, 898 F.3d 543, 551 (5th Cir. 2018) (The Fifth Circuit "has long held that, 'by filing a lawsuit for damages under the bill of lading, [the party] has accepted the terms of the bill of lading . . . .'" (brackets in original) (quoting *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 36 (5th Cir. 1997)). The M/V WECO HOLLI, *in rem*, is bound by the Houston Bill of Lading because the M/V WECO HOLLI ratified the terms and conditions of the Houston Bill of Lading when it set sail from Egypt with the Houston Cargo onboard. *See, e.g.*, *Lykes Lines Ltd. v. M/V BBC SEALAND*, 398 F.3d 319, 325 (5th Cir. 2005) (explaining the "general rule" that a vessel ratifies a bill of lading by setting sail with the cargo subject to the bill of lading).

Second, the Houston Bill of Lading properly incorporates the terms and conditions of the Charter Party, including the Charter Party's mandatory arbitration provision. "A bill of lading can incorporate a charter party if the bill of lading specifically refers to the charter party." *Cargill v. GOLDEN CHARIOT M/V*, 31 F.3d 316, 318 (5th Cir. 1994). The Houston Bill of Lading specifically refers to the Charter Party when it says "[f]reight payable as per CHARTER-PARTY dated 09.06.2022."[35]

Third, the Charter Party's arbitration provision is broad enough to cover the claims that Royal White asserts against the M/V WECO HOLLI, *in rem*. As noted above, the arbitration provision in the Charter Party states that "any dispute arising out [of] this Charter Party shall be referred to arbitration in London . . . ."[36] Royal

---

[35] ECF No. 75-2 at 1.
[36] ECF No. 95-2 at 11 (§ 41.1).

8

White's Carriage of Goods by Sea Act claim against the M/V WECO HOLLI, *in rem*, presents a "dispute arising out [of] this Charter Party"[37] because the factual basis for the claim is alleged damage to cargo that was being transported aboard the M/V WECO HOLLI in accordance with the Charter Party.[38] Accordingly, like Pegasus, Ocean Green has met the first element by presenting evidence of a written agreement to arbitrate that covers Royal White's claims against the M/V WECO HOLLI, *in rem*.

Royal White's limited counterargument does not compel a contrary conclusion. Royal White contends that Pegasus and Ocean Green failed to satisfy the first element, essentially because they did not reference the right charter party in their respective opening briefs.[39] Those briefs referenced a February 8, 2016 charter party for the vessel LADY DAMLA for the transport of cement from Turkey to New York in 2016.[40] Royal White says "[t]here is no evidence" it agreed to be bound by *that* charter party.[41] Royal White instead explains that "another purported charter party . . . may control the relationship," and that "[a] copy of this charter party was provided to counsel for Pegasus on September 5, 2023."[42] Royal White is referring to the June 9, 2022 Charter Party that Pegasus and Ocean Green attached to their respective reply briefs.[43] As discussed above, that Charter Party names Pegasus and Royal White; covers the transport of the Houston Cargo for the relevant voyage of the M/V WECO

---

[37] *Id.*
[38] ECF No. 34 at ¶¶ 43–45 (Royal White's first cause of action); *see also* ECF No. 84 at 7 (Royal White's characterization of its claim "aris[ing] under the Carriage of Goods by Sea Act").
[39] ECF No. 84 at 1–2, 5–6.
[40] ECF No. 48-1.
[41] ECF No. 84 at 4.
[42] *Id.*
[43] ECF No. 95-2 at 6; ECF No. 97-2 at 12–18.

9

HOLLI; and contains a written agreement to arbitrate "any dispute arising out [of] this Charter Party . . . ." Royal White has not disputed the authenticity of the June 9, 2022 Charter Party. Nor has Royal White disputed that it is obligated to arbitrate its claims against Pegasus and the M/V WECO HOLLI, *in rem*, under that June 9, 2022 Charter Party. Accordingly, even if Pegasus and Ocean Green referred to an incorrect charter party in their respective opening briefs, the first element is nonetheless met because it is undisputed that the June 9, 2022 Charter Party controls the relevant voyage and contains a written agreement to arbitrate that covers Royal White's claims against both Pegasus and the M/V WECO HOLLI, *in rem*.[44]

### 2.  Element Two: Arbitration in a Signatory Nation

Pegasus and Ocean Green have satisfied the second of the four elements necessary to compel arbitration under the Convention because the Charter Party's arbitration agreement provides for arbitration in London, which is located in a Convention signatory nation. *See Mosaic Underwriting Serv., Inc. v. MONCLA Marine Operations, L.L.C.*, 926 F. Supp. 2d 865, 869 (E.D. La. 2013) (Feldman, J.).[45]

### 3.  Element Three: Commercial Legal Relationship

Pegasus and Ocean Green have similarly satisfied the third of the four elements necessary to compel arbitration under the Convention. The arbitration

---

[44] The arbitration agreement in the June 9, 2022 Charter Party referenced by Royal White and attached to Pegasus's and Ocean Green's respective reply briefs is materially identical to the arbitration agreement in the February 9, 2016 charter party that Pegasus and Ocean Green referenced in their respective opening briefs. Accordingly, because the Court concludes that the June 9, 2022 Charter Party contains a written agreement to arbitrate the at-issue claims that satisfies the first element, the Court need not—and so the Court does not—separately analyze the February 9, 2016 charter party for the LADY DAMLA to decide if that charter party also satisfies the first element.

[45] Royal White does not dispute that this second element is met. *See* ECF No. 84 at 1–12.

10

agreement is within the Charter Party, and the Charter Party created a "commercial legal relationship" between Royal White and Pegasus for the transportation of cargo by vessel from Egypt to Houston. The arbitration agreement thus "arises out of a commercial legal relationship." *Accord, e.g.*, *Japan Sun Oil Co. v. M/V MAASDIJK*, 864 F. Supp. 561, 565 (E.D. La. 1994) (Berrigan, J.) (concluding that arbitration agreement in charter party arose out of a "commercial legal relationship").[46]

### 4. Element Four: Non-American Citizen as a Party

Pegasus and Ocean Green have satisfied the fourth element necessary to compel arbitration under the Convention because they have shown that at least one party to the Charter Party, Pegasus, is a non-American citizen.[47] Indeed, Pegasus "is a foreign business entity with its principal place of business in Istanbul, Turkey."[48]

\* \* \*

Accordingly, because all four elements are met, the Court "must order arbitration unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." *Bufkin Enters., L.L.C.*, 2024 WL 1262225, at \*3 (brackets in original) (internal citation and quotation marks omitted). No party contends that the Charter Party's arbitration agreement is null and void, inoperative or incapable of being performed. The Court therefore concludes that the arbitration agreement in the Charter Party is *not* "null and void, inoperative or incapable of being performed." *Id.* (internal citation and quotation marks omitted).

---

[46] Royal White does not dispute that this third element is met. *See* ECF No. 84 at 1–12.
[47] Nor does Royal White dispute that this fourth element is met. *See* ECF No. 84 at 1–12.
[48] ECF No. 47-4 at 2 ¶ 3.

In sum, the Convention requires the Court to compel arbitration of Royal White's claims against Pegasus and the M/V WECO HOLLI, *in rem*, because each of the relevant elements necessary to compel arbitration under the Convention is met, and the arbitration agreement in the Charter Party is *not* "null and void, inoperative or incapable of being performed." *Id.* (internal citation and quotation marks omitted). The only remaining question is the scope of the stay pending that arbitration.

B.   **Scope of the Stay Pending Arbitration**

Pegasus and Ocean Green asked the Court in their respective opening briefs to stay "the litigation" without elaboration or analysis.[49] Royal White opposes a stay of "the litigation" in its entirety and submits that, if the Court compels arbitration of the claims covered by the Charter Party's arbitration agreement, the Court should stay the litigation only as to the claims sent to arbitration—that is, Royal White's claims against Pegasus and the M/V WECO HOLLI, *in rem*.[50] For their part, Associated Terminals, Associated Terminals Pangea, and On-Site Concrete Solutions also oppose a stay that would stretch beyond the claims being sent to arbitration and cover the crossclaims they have asserted.[51] In their respective reply briefs, Pegasus and Ocean Green abandon any argument that the Court should stay "the litigation" in its entirety; neither party's reply brief engages with any of the arguments the non-movants raised opposing an all-purpose stay of "the litigation" in its entirety.[52]

---

[49] *See, e.g.*, ECF No. 47-2 at 6 (requesting an order "staying the above-styled and -numbered cause"); ECF No. 75 at 2 (requesting an order "staying the litigation").
[50] ECF No. 84 at 7–9.
[51] ECF No. 57 at 1; ECF No. 61 at 1; ECF No. 77 at 1; ECF No. 79 at 1.
[52] ECF No. 95 (Pegasus); ECF No. 97 (Ocean Green).

12

But even if Pegasus and Ocean Green had not abandoned the argument that the Court should stay "the litigation" in its entirety, the Court would reject it. "In general," a stay under 9 U.S.C. § 3 "only applies to parties to an agreement containing an arbitration clause." *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (internal citation and quotation marks omitted). A Section 3 stay applies "to non-signatories only where: (1) the arbitrated and litigated disputes involve the same operative facts; (2) the claims asserted in the arbitration and the litigation are 'inherently inseparable'; and (3) the litigation has a 'critical impact' on the arbitration." *Id.* (quoting *Waste Mgmt., Inc. v. Residuous Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004)). No party has shown that application of these factors favors a stay of the litigation in full, as to parties and claims not subject to arbitration. So, the Court denies the motions insofar as they seek to stay the litigation in its entirety, as to claims other than those being sent to arbitration.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion[53] of Pegasus to compel arbitration and stay this litigation is **GRANTED IN PART** and **DENIED IN PART**. Royal White and Pegasus are compelled to arbitrate the claims that Royal White asserts against Pegasus in accordance with the mandatory arbitration provision in the Charter Party. Litigation of *those claims* in this Court is stayed pending arbitration. The motion is denied insofar as it seeks to stay this litigation in its entirety.

**IT IS FURTHER ORDERED** that the motion[54] of Ocean Green to compel arbitration and stay this litigation is **GRANTED IN PART** and **DENIED IN PART**. Royal White is compelled to arbitrate the claims that it asserts against the M/V WECO HOLLI, *in rem*, in accordance with the mandatory arbitration provision in the Charter Party, as incorporated into the Houston Bill of Lading. Litigation of *those claims* in this Court is stayed pending the arbitration. The motion is denied insofar as it seeks to stay this litigation in its entirety.

New Orleans, Louisiana, this 9th day of April, 2024.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[53] ECF No. 47.
[54] ECF No. 75.